# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### COLUMBUS DIVISION

| | | |
|---|---|---|
| DARREL HORRY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 4:23-cv-123-CDL-AGH |
| | : | |
| CERT OFFICER TRIPLETT, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## <u>ORDER</u>

Pending before the Court is Plaintiff's motion for a ruling regarding service on Defendant Triplett (ECF No. 48) and his motion to amend or correct the Recast Complaint to include Deputy Warden Thomas as a Defendant (ECF No. 49).  The September 24, 2024 Order and Recommendation (ECF No. 45) has also been remanded to the undersigned to consider whether Plaintiff should be allowed to amend his Recast Complaint to include the factual allegations contained in Plaintiff's October 15, 2024 objections (ECF No. 46).  For the following reasons, the undersigned **WITHDRAWS** the Recommendation to dismiss Defendant Thomas, **GRANTS in part and DENIES in part** Plaintiff's motion to amend or correct his Recast Complaint, and **DENIES as moot** Plaintiff's motion regarding service.[1]

---

[1]   The Clerk may terminate ECF No. 45, given that the undersigned has withdrawn the recommendation to dismiss Defendant Thomas.

**OBJECTIONS AND MOTION TO AMEND OR CORRECT**

## I.  Procedural History

Though the procedural history of this case is somewhat convoluted, the only claim pending before the Court at this time is simple: Plaintiff alleges that CERT Officer Triplett violated Plaintiff's constitutional rights by conducting an unlawful strip search.  *See* Order & R. 9, Sept. 20, 2023, ECF No. 14.  On September 24, 2024, the undersigned permitted Plaintiff to join Muscogee County Prison Deputy Warden Thomas as a Defendant in this action and construed Plaintiff's allegations to raise claims that Defendant Thomas should be held liable in his supervisory capacity for Defendant Triplett's conduct.  Order & R. 2-3, Sept. 24, 2024, ECF No. 45.  The undersigned recommended dismissal of these claims on preliminary review pursuant to 28 U.S.C. § 1915(e), finding Plaintiff failed to state a colorable supervisory liability claim against Defendant Thomas.  *Id.* at 5-6.

Plaintiff timely objected (ECF No. 46), and his objections contained additional facts that could support his claims.  As such, the United States District Judge remanded the September 24 Order and Recommendation to the undersigned "for a determination as to whether Plaintiff should be permitted to amend his complaint to add these factual allegations, including a determination as to whether allowing such amendments would be futile or whether they would state a claim."  Text-only Order, Oct. 29, 2024, ECF No. 47.  Plaintiff also filed a separate motion to amend stating that he intended to sue Defendant Thomas for monetary damages "for his supervisory role he played in this action."  Mot. to Am., ECF No. 49.

## II.    Standard for Motion to Amend

Federal Rule of Civil Procedure 15 governs amended pleadings.  Federal Rule of Civil Procedure 15(a) provides that a plaintiff may amend his complaint once as a matter of right "no later than . . . 21 days after serving it," or no later than 21 days after service of the answer or Rule 12(b), 12(e), or 12(f) motion, "whichever is earlier." Fed. R. Civ. P. 15(a)(1).  Otherwise, a plaintiff may amend his complaint only with leave of court or the opposing party's consent, though "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (holding that leave to amend under Rule 15(a)(2) should be freely given where the "underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief").

While the Court has discretion to grant or deny amendment., the Court must provide some "justifying reason" to deny this opportunity; absent such reason, denial "is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."  *Foman*, 371 U.S. at 182.  Reasons for denial may include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Id.*  An amendment is futile when the proposed amendment fails to state a claim upon which relief may be granted.  *Groover v. Israel*, 684 F. App'x 782, 785 (11th Cir. 2017).  Because a motion to amend is non-dispositive, a magistrate judge may rule on it in an order rather than

a report and recommendation. *Reeves v. DSI Sec. Servs., Inc.*, 395 F. App'x 544, 548 (11th Cir. 2010) ("A district court may also designate a magistrate judge to rule on certain non-dispositive pretrial motions, such as a motion to amend a complaint."); *Palmore v. Hicks*, 383 F. App'x 897, 899-900 (11th Cir. 2010) ("An order disposing of a motion to amend is a non-dispositive pretrial ruling.").

## III.   Plaintiff's Claims

The undersigned was effectively directed to construe the October 15, 2024 Objections as a motion to amend. *See, e.g., Newsome v. Chatham Cnty. Det. Ctr.*, 256 F. App'x 342, 344 (11th Cir. 2007) (holding that district court should have construed additional factual allegations in plaintiff's objection to recommendation of dismissal as a motion to amend the complaint). The October 15, 2024 Objections and the December 27, 2024 Motion to Amend seek to amend the Recast Complaint to raise a Fourth Amendment claim against Defendant Thomas. Obj. 1, Oct. 15, 2024, ECF No. 46; *see also* Mot. to Am.[2] Plaintiff also requests "to bring back his original claims of Eighth Amendment violations concerning the conditions he's endured while at Muscogee County Prison." Obj. 1, Oct. 15, 2024. These "original" claims related to the food served at the prison, Plaintiff's disciplinary reports, and alleged staff neglect of Plaintiff's grievances. Recast Compl. 5, ECF No. 8. Plaintiff may also be seeking to amend his Recast Complaint to add entirely new claims, including claims for

---

[2] Plaintiff has already amended at least once. *See* Suppl. R. & R. 1, Oct. 20, 2023, ECF No. 24 (construing Plaintiff's October 13, 2023 Objections as a motion to amend, granting it, and screening claims pursuant to 28 U.S.C. §§ 1915A and 1915(e)). He therefore requires leave of Court to amend again, even though no Defendant has been served. Fed. R. Civ. P. 15(a).

retaliation, a failure to keep Plaintiff safe, and wrongful conviction and denial of bond.  Obj. 2-3, Oct. 15, 2024.

A.    Official Capacity Claims against Defendant Thomas

As an initial matter, Plaintiff seeks to amend his Recast Complaint to sue Defendant Thomas in his individual and official capacities, and he requests only monetary relief.  Mot. to Am.; *see also* Recast Compl. Attach. 1, at 11, ECF No. 8-1. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).  As an employee of a state prison under the authority of the Georgia Department of Corrections, Defendant Thomas is considered a state agent, and Plaintiff's claims against him are thus claims against the State itself.[3]

The Eleventh Amendment "provides immunity by restricting federal courts' judicial power" and "protects a State from being sued in federal court without the State's consent."  *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc). "Although not readily apparent from the amendment's text, it has long been settled that the amendment applies equally to suits against a state brought in federal court by citizens of that state."  *Harbert Int'l, Inc. v. James*, 157 F.3d 1272, 1277 (11th Cir. 1998).  Thus, Eleventh Amendment immunity bars an official capacity suit for damages when the defendant officer is an agent of the State itself or an "arm of the

---

[3]  Additionally, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989).

State." *Manders*, 338 F.3d at 1308; *see also Harbert*, 157 F.3d at 1277 ("The state need not be formally named as a defendant for the amendment to apply; state officials sued in their official capacity are also protected by the amendment.").[4] Plaintiff's claims against Defendant Thomas in his official capacity for monetary damages are therefore barred by the Eleventh Amendment, and his motion to amend his Recast Complaint to include them is denied as futile.

### B.    Fourth Amendment Claims against Defendant Thomas

Next, Plaintiff seeks to amend his Recast Complaint to add a claim that Defendant Thomas is liable for the strip search conducted by Defendant Triplett. Obj. 1, Oct. 15, 2024; Mot. to Am. As was previously explained to Plaintiff, supervisory officials cannot be held liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. *See, e.g.*, *Christmas v. Nabors*, 76 F.4th 1320, 1330 (11th Cir. 2023). Rather, a supervisor can only be held liable under § 1983 "when he personally participates in those acts or when a causal connection exists between his actions and the constitutional deprivation." *Id.* A causal connection can be established if

> (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so"; (2) "the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights"; or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."

---

[4] Eleventh Amendment immunity does not apply to suits against state officials in their official capacity when prospective injunctive or declaratory relief is sought to end a continuing violation of federal law. *Florida Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1219 (11th Cir. 2000) (citations omitted). As noted above, however, Plaintiff seeks only monetary damages and not declaratory or injunctive relief.

*Hendrix v Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (alterations in original) (quoting *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008)).  "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (quoting *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1266 (11th Cir. 2010)).

Plaintiff does not allege that Defendant Thomas personally participated in the search conducted by Defendant Triplett.  In the October 15, 2024 Objections, however, he alleges that Defendant Thomas is the head of security at Muscogee County Prison and is therefore "the supervisor responsible for having the camera in the shakedown shack where Justice Involved Persons are strip searched[.]"  Obj. 1, Oct. 15, 2024.  Plaintiff further suggests that Defendant Thomas knew the searches were filmed and displayed on a large television that faced the hallway where other officers and inmates could see the searches, ordered CERT officials to conduct these searches with as many as six inmates and six officers in the room at once, and has been conducting searches in this manner for 20 years.  *Id.* at 1-2.  These allegations are sufficient to permit Plaintiff's Fourth Amendment claims against Defendant Thomas to proceed for further factual development.  *See, e.g.*, *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993) (quotation marks and citation omitted) ("We are persuaded to join other circuits in recognizing a prisoner's constitutional right to bodily privacy because most people have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be

especially demeaning and humiliating.").  His motion to amend is granted to the extent he seeks to amend his Recast Complaint to include these claims.

C.    Claims Previously Asserted

In his October 15, 2024 Objections, Plaintiff also requests to "bring back his original claims of Eighth Amendment violations concerning the conditions he's endured while at Muscogee County Prison."  Obj. 1, Oct. 15, 2024.  Plaintiff did not name Defendant Thomas as a party in his Recast Complaint.  Recast Compl. Attach. 1, at 4, 11.  There are thus no claims against Defendant Thomas to "bring back."  In his October 15, 2024 Objections, however, Plaintiff also generally alleges that "Deputy Warden Thomas is liable as a supervisor in the harms committed to the plaintiff."  Obj. 1, Oct. 15, 2024.  In an abundance of caution, the undersigned will liberally construe this allegation as seeking to amend to raise claims that Defendant Thomas is liable for the potential constitutional violations described in the Recast Complaint.[5]

Plaintiff's Recast Complaint asserts three separate claims, although not all of them arise under the Eighth Amendment as he contends.  First, Plaintiff suggests his due process rights were violated with respect to disciplinary reports he received

---

[5] Because the Fourth Amendment claims against both Defendants Thomas and Triplett are proceeding for further factual development, Plaintiff may join any claims he has against Defendant Thomas, even if they are not related to the Fourth Amendment claims, and even if they are not also brought against Defendant Triplett, pursuant to Federal Rule of Civil Procedure 18(a).  *See, e.g.*, 6A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1585 (3d ed. June 2024) ("Once parties are properly joined under [Rule 20] as to a particular claim, additional claims, whether they are related or unrelated or they are by or against all or less than all of the parties may be joined under Rule 18(a).").  Plaintiff, however, cannot join—or "bring back"—any other Defendants in this action unless he can establish that those Defendants are properly joined as parties pursuant to Federal Rule of Civil Procedure 20(a)(2).

on October 15, 2022 and April 18, 2023. Recast Compl. Attach. 1, at 6-7. Second, Plaintiff contends that between November 2022 and March 2023, his counselor ignored multiple online kiosk messages. *Id.* at 7. Finally, Plaintiff contends the food at the prison "is served uncooked or sometimes raw," and it is provided to inmates in a buffet-style line near "foot traffic" with flies "everywhere." *Id.* at 7-8.

### 1. Disciplinary Report Claims

As discussed above, a supervisor, such as Defendant Thomas, may be held liable under § 1983 if he personally participates in the constitutional violation or if there is a causal connection between his own actions and the alleged constitutional violation. *Christmas*, 76 F.4th at 1330. Plaintiff's allegations with respect to his disciplinary reports fail to meet this high bar. Plaintiff has not alleged that Defendant Thomas personally participated in the disciplinary report process. He also fails to plead any facts related to a history of similar issues with disciplinary reports, any improper customs or policies regarding disciplinary reports, or Defendant Thomas's knowledge that his subordinates were acting unlawfully. *See Piazza v. Jefferson Cnty.*, 923 F.3d 947, 958 (11th Cir. 2019) (prisoner failed to state supervisory liability claim where he failed to "point to other instances" of similar unconstitutional conduct, "allege any facts indicating that [supervisors] were on notice of the officers' alleged deliberate indifference," or plead any facts related to the policies or customs that led to constitutional violations). Plaintiff has therefore failed to state an actionable claim regarding his disciplinary reports, and his motion to amend to include such claims is denied as futile.

2.    *Claims Related to Plaintiff's Counselor*

Plaintiff also contends he repeatedly complained to his counselor about "various issues," including problems with his approved family member list (and its effect on his ability to have money deposited into his inmate account) and his on-the-job training credits.  Recast Compl. Attach. 1, at 7.  Plaintiff contends his counselor never responded to him.  *Id.*  Plaintiff filed a grievance regarding "councilor [sic] neglect," and "the warden" responded that Plaintiff would have to "follow the appeals process" concerning his grievance against his counselor.  *Id.*

It is not reasonable to infer that Plaintiff was referring to Defendant Thomas when he stated that "the warden" told him he would have to appeal his grievance about his counselor.  *Id.* at 7.  Plaintiff did not refer to Defendant Thomas by name, and the only "warden" named as a defendant in Plaintiff's Recast Complaint was the head warden of the prison, Defendant Walker.  *See id.* at 4, 9.  Indeed, Plaintiff did not seek to add Defendant Thomas to this case until he filed his motion for joinder on June 27, 2024, more than a year after he filed his original Complaint.  Mot. for Joinder, ECF No. 42.  Plaintiff also fails to allege any facts in his October 15, 2024 Objections or his pending motion to amend that could suggest Defendant Thomas was involved in the disciplinary report process in any capacity.  Plaintiff has therefore failed to state an actionable claim against Defendant Thomas regarding Plaintiff's grievances about his counselor.  *Douglas*, 535 F.3d at 1321-22 (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants

with a particular constitutional violation).  Leave to amend to add such claims is thus denied as futile.

Moreover, Plaintiff fails to state a constitutional claim based solely on his allegation that "the warden" told Plaintiff to appeal his grievance about his counselor. At most, this allegation could give rise to the inference that "the warden" knew the counselor was ignoring Plaintiff's grievances.  But Plaintiff does not have a constitutional right to access a prison's grievance procedure or have those procedures properly followed.  *See, e.g., Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (affirming dismissal of prisoner's claims that he was denied use of the prison's grievance procedure because "a prison grievance procedure does not provide an inmate with a constitutionally protected interest"); *see also Mathews v. Moss*, 506 F. App'x 981, 984 (11th Cir. 2013) (holding that inmate failed to state cognizable claim where he "alleged that his prison grievances were either ignored or wrongly decided or that prison officials did not properly follow the prison's own grievance procedures"). And, "[t]here can be no policy-based liability or supervisory liability when there is no underlying constitutional violation."  *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 821 (11th Cir. 2017) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).  Because the counselor's actions do not rise to the level of a constitutional violation, Plaintiff cannot raise a supervisory liability claim against "the warden" based on those same actions.  Amending is also futile for this reason.[6]

---

[6]  While a prison official can sometimes be held responsible for failing to take action to correct a substantive constitutional violation set forth in an inmate's grievances, Plaintiff does not clearly describe the content of his grievances or explain how the failure to include unspecified individuals on

### 3.    Food Service Claims

Finally, Plaintiff alleges that he complained to "the warden" about the food at the prison, but "the warden" took no action.  Recast Compl. Attach. 1, at 8.  A prison is constitutionally obligated to "provid[e] nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it."  *Ramos v. Lamm*, 639 F.2d 559, 570-71 (10th Cir. 1980); *see also LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (holding that the food provided to inmates "need not be tasty or aesthetically pleasing," but it must be "adequate to maintain health").

Plaintiff's allegations about his food are more generally a challenge to the conditions of his confinement under the Eighth Amendment.  This type of claim has both objective and subjective components.  *Christmas*, 76 F.4th at 1331.  To state a claim, an inmate must first show that the deprivations he suffers are objectively and sufficiently "serious" or "extreme" so as to constitute a denial of the "minimal civilized measure of life's necessities."  *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010). This standard is only met when the challenged conditions present "an unreasonable risk of serious damage to [the prisoner's] future health or safety," *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotation marks omitted), or if society "considers the risk that the prisoner complains of to be so grave that it violates

---

his approved contact list or to properly calculate his job training credits violates a constitutional or statutory right, as is required under § 1983.

contemporary standards of decency to expose *anyone* unwillingly to such a risk," *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

To meet the subjective standard in a prison conditions case, a plaintiff must show that the prison official acted with deliberate indifference. *Thomas*, 614 F.3d at 1304; *Christmas*, 76 F.4th at 1331. To establish deliberate indifference, a plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with 'subjective recklessness as used in the criminal law.'" *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc) (quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)).

The first prong of deliberate indifference—subjective awareness—requires "that the prison 'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (quoting *Farmer*, 511 U.S. at 837). Proving that a defendant was subjectively aware of a serious risk of harm "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (internal citation omitted).

The second prong—disregard of the risk—is objective, and the facts must show that the defendant responded to the risk in an objectively unreasonable manner, "in that he or she 'knew of ways to reduce the harm' but knowingly or recklessly declined

to act." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (quoting *Rodriguez*, 508 F.3d at 620).  The third prong—subjective recklessness—is satisfied only if the plaintiff shows "that the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm."  *Wade*, 106 F.4th at 1253.

Plaintiff's vague and conclusory allegations fall short of showing a condition that is objectively serious or extreme enough to state an Eighth Amendment claim. Plaintiff alleges there are flies "everywhere" in the chow hall at the prison, food is served near "continuous foot traffic," and five out of every seven dinner meals are "served uncooked or sometimes raw."  Recast Compl. Attach. 1, at 8.  Plaintiff never explains the effects the flies and "continuous foot traffic" have on the quality of his food, nor does he explain how long he was exposed to any of these conditions.  In addition, Plaintiff fails to clarify whether the "uncooked or sometimes raw" food was unfit to eat or simply cold and unappetizing.  *See Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."); *see also Morgan v. Valley State Prison*, 1:20-cv-00029-ADA-GSA-PC, 2023 WL 2563480, at *19-20 (E.D. Cal. Mar. 17, 2023) (finding that allegation that prisoners were "being served partially-frozen meals" did not state claim because "cold food is not a deprivation sufficient to constitute cruel and unusual punishment under the Eighth Amendment").

Perhaps more importantly, while Plaintiff contends that he suffered food poisoning on one occasion, Recast Compl. Attach. 1, at 8, he does not provide any details about the severity of this illness, allege that he suffered any other injury from consuming the prison's food, or provide facts linking his consumption of a specific uncooked, raw, or otherwise contaminated food to his single bout with food poisoning. Courts have repeatedly held that temporary or isolated incidents of unsanitary or inedible food—even when accompanied by some sickness—do not rise to the level of a constitutional violation. *See, e.g.*, *George v. King*, 837 F.2d 705, 706-77 (5th Cir. 1988) (affirming dismissal of "prisoner's suit asserting a single incident of food poisoning, not causing any permanent injury or serious medical complications and which is treated with at least minimal adequacy" as frivolous on initial screening even "where the illness allegedly arises from the neglect of the prison food service department" and its informal policies). Courts instead require significantly more detail about the nature and duration of the alleged deprivation and the severity of the resulting harm before finding Eighth Amendment violations in the food service context. *See, e.g.*, *Morgan*, 2023 WL 2563480, at *19-20 (finding allegations sufficient to state claim where they described specific practices over the course of multiple years that caused food to be regularly spoiled and contaminated with bones, among other things, and alleged inmate "injured his mouth and teeth eating meat that contained shards of bone, and suffered indigestion from an inadequate diet").

In addition, Plaintiff's allegations that "the warden" responded to Plaintiff's grievance by stating "he found no issue with the food service and no change occurred,"

Recast Compl. Attach. 1, at 8, are not sufficient to show that Defendant Thomas was deliberately indifferent to any risk posed to Plaintiff by the prison's food service. As discussed above, the Court cannot find that Plaintiff was referring to Defendant Thomas in his Recast Complaint because he did not mention Defendant Thomas by name, he did not name Defendant Thomas as a Defendant in the Recast Complaint, and he did not allege any facts linking Defendant Thomas specifically to this claim in his October 15, 2024 Objections or his pending motion to amend. *Douglas*, 535 F.3d at 1321-22. Plaintiff also fails to allege any facts suggesting that Defendant Thomas—the head of security—would be liable in his supervisory capacity for the actions of the kitchen staff. *See, e.g.*, *Williams v. Bennett*, 689 F.2d 1383, 1384 (11th Cir. 1982) ("There can be no duty, the breach of which is actionable, to do that which is beyond the power, authority, or means of the charged party."). For these reasons, Plaintiff's motion to amend the Recast Complaint to assert claims against Defendant Thomas based on the prison's food service is denied as futile.

D.    Claims Raised in Objections Only

Next, there are some allegations in Plaintiff's October 15, 2024 Objections that could give rise to entirely new claims, although it is unclear whether Plaintiff intended to raise new claims or made these allegations for context only. Either way, Plaintiff fails to state a claim upon which relief may be granted. Plaintiff first suggests Defendant Thomas retaliated against him for filing this lawsuit by "rais[ing] Plaintiff's classification score up so high" that every new prison to which he is

16

transferred places him in "the worst dorms on compound." Obj. 2, Oct. 15, 2024.[7] He also suggests he "has been shipped to multiple different prisons as a weapon to stop him from pursuing his freedom." *Id.* at 3. To state a retaliation claim, an inmate generally needs to show that he engaged in protected conduct; that the prison official's retaliatory conduct adversely affected the protected conduct; and a causal connection between the protected conduct and the adverse action. *See, e.g.*, *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).

While the filing of a lawsuit is protected conduct for purposes of a retaliation claim, Plaintiff fails to allege facts sufficient to show a causal connection between the filing of the lawsuit and the raising of Plaintiff's classification score or his transfers. To show this causal connection, Plaintiff must plead facts that show Defendant Thomas was subjectively motivated to raise Plaintiff's classification score or transfer Plaintiff because he filed this lawsuit. *Christmas*, 76 F.4th at 1334. "This motive analysis is subject to a burden-shifting framework." *Williams v. Radford*, 64 F.4th 1185, 1193 (11th Cir. 2023). Under this framework, Plaintiff must first show that the filing of this lawsuit was a "motivating factor" in Defendant Thomas's decision to raise Plaintiff's classification score or transfer Plaintiff. *Id.* (citing *Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Plaintiff fails to plead any facts that could plausibly give rise to this inference. Absent such facts, Plaintiff cannot state a retaliation claim. *Gonzales v. Archer*, 725 F. App'x 739, 742-43 (11th Cir.

---

[7] Plaintiff does not have a "protected liberty interest in a particular custody classification," so he cannot state an independent due process claim based on his score or placement. *Mathews*, 506 F. App'x at 983.

17

2018) (holding that inmate "failed to state a viable retaliation claim" where he "did not present facts that plausibly support a causal connection between" his grievances, the defendants, and the adverse actions taken against him). Leave to amend the Recast Complaint to include such claims is therefore denied as futile.

Plaintiff also states that "[m]ultiple individuals have died at Muscogee County Prison w[h]ether at work on detail or as a result of beatings from the CERT team." Obj. 2, Oct. 15, 2024. "It is well settled that prison officials must take reasonable measures to guarantee the safety of the inmates," and prison officials who are "deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury" can violate the Eighth Amendment. *Marbury*, 936 F.3d at 1233 (internal quotation marks and citations omitted). But Plaintiff fails to plead any facts directly associating either Defendant Triplett or Defendant Thomas with any of these deaths, and he therefore fails to state a claim against them based on their personal participation in the events that caused those deaths. *Douglas*, 535 F.3d at 1321-22. Plaintiff also fails to raise a claim against either Defendant in his supervisory capacity. At most, Plaintiff alleges that Defendant Triplett is a member of the CERT team, and he states that the CERT team "takes direct orders from Deputy Warden Thomas," at least for purposes of conducting strip searches. Obj. 1-2, Oct. 15, 2024. But Plaintiff does not allege any facts suggesting that either Defendant (or the CERT team) had any authority over or involvement in any work details; nor does he allege any facts that could be fairly construed as suggesting that either Defendant directed his subordinates to harm inmates or should be held liable for their subordinates'

conduct under any of the other bases for supervisory liability. Plaintiff is therefore denied leave to amend his Recast Complaint to include any of these potential claims.

Finally, Plaintiff briefly mentions that he was "wrongfully convicted" and denied bond. *Id.* at 3. Again, however, Plaintiff fails to allege any facts whatsoever indicating that either named Defendant was involved in the state court proceedings leading up to his present incarceration. To the extent Plaintiff seeks to raise such claim, leave to amend is denied as futile. *Douglas*, 535 F.3d at 1321-22.

### MOTION REGARDING SERVICE ON DEFENDANT TRIPLETT

Plaintiff also filed a motion requesting that the Court "clarify how [the] complaint not being served to defendant is no fault of his own[.]" Mot. for Serv. Ruling, ECF No. 48. Plaintiff notes that the United States Marshal has been unable to serve Defendant Triplett and that it has been more than one year since they attempted to do so. *Id.* As the Court previously advised Plaintiff, a Deputy United States Marshal ("DUSM") met with Defendant Triplett's father, who provided the DUSM with a copy of Defendant's military orders showing that Defendant Triplett was deployed to Kuwait and was not scheduled to return until late November 2024, at the earliest. *See* Order 1, June 12, 2024, ECF No. 41. The Court is thus well-aware that the failure to serve Defendant Triplett is not Plaintiff's fault. And, because Defendant Triplett should now be back in the United States, the United States Marshal is again **DIRECTED** to attempt to serve Defendant Triplett as provided below. Plaintiff's motion (ECF No. 48) is **DENIED as moot.**

## CONCLUSION

For the foregoing reasons, the undersigned **DENIES as moot** Plaintiff's motion regarding service on Defendant Triplett (ECF No. 48). The Court also **GRANTS in part and DENIES in part** Plaintiff's motion to amend or correct (ECF No. 49), **WITHDRAWS** the Recommendation to dismiss Defendant Thomas, **DIRECTS** the Clerk to terminate ECF No. 45, and finds that Plaintiff's Fourth Amendment unlawful search claims against Defendants Thomas and Triplett shall proceed for further factual development.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Clay D. Land, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff's allegations against Defendant Thomas and Triplett require further factual development, it is accordingly **ORDERED** that

service be made on those Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions,

pleadings, or correspondence shall be served electronically at the time of filing with the Court.  If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff.  The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.  Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.  The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.  **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendants (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause

therefor or a protective order is sought by the defendant and granted by the court. This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party. The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery: except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest

time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 10th day of April, 2025.

 s/ *Amelia G. Helmick*
UNITED STATES MAGISTRATE JUDGE